[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties intermarried on May 14, 1983 at Santa Barbara, California. The parties have resided continuously in this state since January 1990. There is one minor child issue of the marriage, Rebecca Newman born January 4, 1990.
The evidence presented at trial has clearly established the allegation that the marriage has irretrievably broken down. Judgment may enter on that ground.
The court has carefully considered the criteria set forth in Section 46b-81, Section 46b-82, Section 46b-84 and Section 46b-56, of the Connecticut General Statutes in reaching the decisions reflected in the orders that follow.
This is a marriage of slightly less than 9 years although the parties have been separated since January 1991. Both parties are in their early 30's and both parties are in good health.
Throughout the marriage the wife worked on different occasions at a variety of jobs, earning at most approximately $300. per week. The Plaintiff is a graduate of a Commercial Photography School. Since her graduation from college she has received a monthly stipend from a trust set up by her father. During the past 3 years the Plaintiff has received an average of $19,000. — per year from this trust. Since the birth of their child on January 4, 1990, the Plaintiff has remained at home and has devoted herself to the care and upbringing of their minor child.
The Defendant is the beneficiary of inherited funds totaling approximately $2.2 Million Dollars. The 2 portfolios are noted as exhibit A and exhibit B on the defendant's financial affidavit. Exhibit A is a discretionary account in which the defendant has the power to invade the corpus. Exhibit B is held in trust and the Defendant is entitled to 100% of the income. Both funds are in conservative blue chip investments and generate a return of approximately 3% net after taxes and commission. The portfolios also generate tax exempt interest income. At the present time the funds are 56% income oriented and 45% growth oriented.
The Defendant is a graduate of the Brooks Institute in California and in 1985 opened up his own business called "Newman Photographic, Inc." in New York. He has loaned his Company approximately $490.00, from his inherited funds. This Company has assets of approximately $120,000, and a lease that expires in June 1993.
Throughout the course of their marriage the parties lived on the income from the husband's inherited funds and the wife's trust income. The parties lived well, went on vacations and trips and did not struggle for money. CT Page 1898
In June 1990 the parties purchased a home in Greenwich for $790,000. The Bankers Trust Bank provided 100% financing for the purchase. When the parties sold their New York Co-op they paid down the mortgage so that at the present time the mortgage is approximately $350,500, on the marital home.
The parties were spending approximately $12,000. — per month during the short time they lived together in the marital home in Greenwich.
The parties experienced some marital difficulties and commencing in 1985 both parties became involved in marital counseling. Although both parties wanted a child, both parties seemed to feel the birth of their child in January 1990 had an adverse effect on their marriage-relationship, which was shaky prior to the birth of the child.
Unfortunately, the parties were unable to resolve their marital difficulties. The court declines to assess fault to either party for the breakdown of the marital relationship, Victoria's Secret notwithstanding.
At the present time, the Defendant is drawing approximately $552 per month in Salary from his employment at Newman Photographic, Inc. The defendant had been drawing approximately $28,000. per year in 1990 and for a short period of time a salary annualized at $48,000. — per year. The parties have not filed a tax return for the year ending 1991.
The Defendant presently has three full time employees and a part time employee. His total payroll is $2700. per week. The Defendant plans to continue this business at least through June 1993 when his lease expires in the hopes that it will grow and become more profitable.
The Defendant desires to hold intact a substantial amount of his inherited funds for the benefit of his daughter. Although admirable, the reality of the situation is that the child and the Plaintiff, who is unemployed and with questionable work skills, (although a college graduate) require and need financial assistance at this time. So too, the Plaintiff will have to consider returning to the work field and obtaining smaller housing for herself and the minor child.
The court finds that the husband is underemployed and in fashioning the financial orders that follow, the Court has considered the husband's two portfolios acquired by the husband through inheritance, each portfolio having a value of approximately $1 million. The Court has also considered the standard of living CT Page 1899 enjoyed by the parties prior to their separation. The Defendant on occasion has invaded the corpus of his assets to provide for additional monies to meet the parties desire for material things.
According to the parties 1990 income tax return, the Defendant had an income of approximately $150,000, which includes approximately $50,000. — of tax exempt interest.
The Court has carefully considered all the statutory criteria in reaching the decisions reflected in the orders that follow.
Real Estate
1. The Defendant shall quitclaim all his right, title and interest in the marital residence located at 2 Fairway Lane, Greenwich, Conn. to the Plaintiff. The Plaintiff shall be liable for and shall hold the Defendant harmless from all mortgage and real estate tax payments.
2. The Defendant shall be responsible for the mortgage and taxes due for the month of February 1992.
3. The Defendant shall be entitled to his interest in the Georgia Real Estate free and clear of any claim by the Plaintiff.
Custody and Visitation
1. The parties have agreed and it is ordered that there shall be joint legal custody of the minor child with physical residence with the Plaintiff.
2. The Defendant shall be entitled to reasonable, liberal and flexible rights of visitation with the minor child. The parties have agreed that in the event there is a disagreement between the parties with respect to visitation, Dr. Jerome Brodlie of Greenwich, Conn. shall mediate the disagreement. The parties shall equally share the expense of Dr. Brodlie's fees. In the event the parties are unable to agree, then the parties shall return to Court for appropriate orders after a hearing.
3. In the event either party moves more than fifty (50) miles from Greenwich, Conn. the party making such move shall notify the other party 90 days in advance of such move so that the visitation schedule and cost may be modified depending on the circumstances then existing.
Alimony and Child Support
1. Commencing March 1, 1992 the Defendant during his lifetime, shall pay to the Plaintiff, as periodic unallocated CT Page 1900 alimony and child support the sum of $5000. — per month until the Plaintiff shall die, remarry or cohabit within the meaning of the statute or for a period of 6 years from date whichever event shall first occur.
2. Upon the termination of the unallocated alimony and child support as hereinabove provided, the Defendant shall pay to the Plaintiff as child support an amount as agreed upon by the parties and in accordance with the child support guidelines then in effect.
3. If the parties are unable to agree on the amount of child support, they shall return to court for an appropriate order after a hearing thereon.
4. Said child support shall be paid until the Defendant's death, the emancipation of the minor child or until the minor child reaches the age of 18 years whichever event first occurs.
5. In view of the age of the minor child at this time, the court declines to enter any orders as to the costs for the minor child's future education.
Property Settlement
1. The Plaintiff is awarded a lump sum property settlement in the amount of $50,000. — to be paid to the Plaintiff within 30 days of date.
Personal Property
1. The Defendant shall purchase the Ford motor vehicle presently being driven by the Plaintiff from the present leasing company and shall deliver clean title to the Plaintiff.
2. The Plaintiff shall be entitled to her 1983 BMW motor vehicle.
3. The Defendant shall be entitled to his 1978 Porsche motor vehicle.
4. The Defendant shall be entitled to the 50 1 ounce Canadian Maple Leaf Gold Coins.
5. The Plaintiff shall forthwith resign as an officer and transfer any and all stock in Newman Photographic, Inc. to the Defendant and the Plaintiff shall waive any interest in the Business for the future. Said Business shall be the sole property of the Defendant. CT Page 1901
6. Each party shall be entitled to their respective IRA's.
7. The Plaintiff shall be entitled to her Money Market accounts, savings and checking accounts and the Dreyfus Fund account.
8. The Defendant shall be entitled to his Bankers Trust Discretionary Investment account and any other assets as listed on his financial affidavit and not otherwise disposed of herein.
Household Furnishings
1. The parties were at odds over the division of their household furnishings and furniture. The parties agreed that the Defendant was entitled to the items listed in schedule A page 10 and the first 8 items on page 11, Schedule A of the Defendant's Prayers for Relief dated February 20, 1992 and it is so ordered.
2. The remaining items shall be divided between the parties as they shall agree. If the parties are unable to agree, they are referred to Family Services for Mediation. If this fails the court will enter appropriate orders after holding a hearing on this matter.
Medical Insurance
1. The Defendant shall provide and maintain Medical and hospitalization insurance for the benefits of the minor child. Any unreimbursed Medical, hospital, dental, psychiatric and orthodontics expenses shall be shared as follows: the Defendant shall pay 2/3rds and the Plaintiff shall pay 1/3rd of any unreimbursed expense.
2. Sec. 46b-84c C.G.S. [and]* is ordered.
3. The Plaintiff shall be entitled to COBRA rights under the Defendant's medical coverage for a period of 36 months or until the Plaintiff obtains her own medical coverage whichever first occurs. The Plaintiff shall be responsible for the costs of the COBRA coverage.
Debts
1. The Defendant shall be responsible for the unpaid medical bills of Dr. Ross Frank ($3260.), Dr. Haggert ($900.), Dr. Brodlie ($1030.) and Dr. Phansalcar ($130.). The Plaintiff shall be responsible for the remaining liabilities as noted on her financial affidavit. CT Page 1902
Counsel Fees
1. Counsel for the Defendant is presently holding an escrow account in the approximate amount of $20,000, as a result of joint income tax refunds. From said account, it is ordered that $10,000, be paid to the Plaintiff as a contribution toward her counsel fees. The balance of said account shall be the sole property of the defendant.
Life Insurance
1. The Defendant shall maintain Five Hundred Thousand ($500,000.) Dollars in life insurance for the benefit of the Plaintiff and the minor child for so long as the Defendant has alimony and/or child support obligations.
COPPETO, JUDGE